# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| TRANSFORMATIONS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EATON CORPORATION, ) <br> ) <br> Defendant. ) <br>_____) <br> ) <br> EATON CORPORATION, ) <br> ) <br> Counter-Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TRANSFORMATIONS, INC., ) <br> ) <br> Counter-Defendant. ) | No: 05-0052 <br><br> Judge Robert L. Echols <br><br> Magistrate Judge <br>   E. Clifton Knowles |

## AMENDED COMPLAINT

Plaintiff Transformations, Inc. ("Transformations"), for its amended complaint against Defendant Eaton Corporation ("Eaton"), states as follows:

### I. Parties, Jurisdiction And Venue

1.     Transformations is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business located at 7000 Executive Center Drive, Brentwood, Tennessee 37024.

2.     Eaton is a corporation organized and existing under the laws of the State of Ohio with its principal place of business located at 1111 Superior Avenue, Cleveland, Ohio 44114.

3. This court has original jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §1332(a)(1) because it is a dispute between citizens of different States and the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $75,000.

4. This Court also has original jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §1331 because some of the claims set forth herein arise under the laws of the United States.

5. The United States District Court for the Middle District of Tennessee is the proper venue for this action pursuant to 28 U.S.C. §1391(a)(2) because a substantial portion of the events giving rise to the claim took place in this district.

## II. General Allegations

6. Transformations is in the business of creating and servicing "enterprise resource programming," which is the term used to describe comprehensive software that is designed to automate all components of manufacturing and distribution plants.

7. Eaton is in the business of industrial manufacturing. Eaton has a Boston Weatherhead division that makes heavy-duty rubber hoses for hydraulics, pumps, and other industrial uses. Prior to being acquired by Eaton, the Boston Weatherhead Division was owned by Dana Corporation ("Dana"). Transformations first did business with Dana in approximately 1989 or 1990.

8. During 1999, Transformations and Dana entered into discussions regarding the possibility of Transformations undertaking several enterprise resource programming projects on behalf of Dana. The projects the parties discussed were broad in scope, and would require Transformations to use a substantial portion of its

2

resources. Transformations indicated to Dana that, in order for Transformations to dedicate those resources to Dana, potentially to the detriment of servicing other existing and new customers, Dana would need to commit to ongoing support, maintenance and licensing agreements with Transformations in addition to the initial development and implementation services. Dana agreed, both at the time of these preliminary discussions, as well as later during contract negotiations, to commit to purchasing ongoing support, maintenance and licensing from Transformations.

9. On or about June 7, 1999, Transformations and Dana entered into a TransMRP Agreement ("the TransMRP Agreement," a copy of which is attached hereto as Exhibit A) for the development, implementation and integration of various software programs designed by Transformations and licensed to Dana to operate its plants owned by its Boston Weatherhead Division (the "Software"). The Software enabled Boston Weatherhead to operate its plants logistically in virtually all phases of manufacture, accounting and sales. The Pricing Schedule of the TransMRP Agreement provided that the initial cost of the project would be comprised of two components: an initial software fee of $300,000, and a services component under which professional services related to customizing and enhancing the Software were to be billed at $120 per hour. At the time that the parties entered into the TransMRP, they did not cap or even estimate the number of hours of professional services that would be required. Ultimately, the total contract price for the initial phase of the contract was $1,535,075, which was comprised of the $300,000 initial fee, and $1,235, 075 in billings for professional services. There is no dispute concerning the total cost of the TransMRP program.

3

10. The TransMRP Agreement further provided that Dana would pay an additional sum (equal to twenty percent of the initial contract price as described above plus applicable taxes) to Transformations annually for maintenance, support and licensing. On or about December 1, 2001, after the full cost of the professional services provided under the TransMRP was known, Dana and Transformations memorialized the amount that would be due annually for maintenance, support and licensing. Accordingly, the annual amount due for maintenance, support and licensing was $307,015, plus tax, which totaled $337,700 per year.

11. Pursuant to Article V, Intellectual Property, of the TransMRP Agreement, Transformations granted a site license to Boston Weatherhead, while Transformations retained proprietary rights to the Software.

12. Pursuant to Article XIV, Section 5, of the TransMRP Agreement, neither Transformations nor Dana could assign or delegate its rights or obligations under the TransMRP Agreement to any other person and/or entity without prior express written approval of the other party. That provision further stated that "[s]ubject to the foregoing, this Agreement shall inure to the benefit of and be binding upon the successors, legal representatives and assignees of the Parties hereto."

13. On or about July 16, 2001, Transformations and Dana entered into an additional agreement for the development and installation of open connectivity link software that integrated Dana's existing TransMRP systems with other software called BAAN ERP (the "BAAN Integration Agreement," a copy of which is attached hereto as Exhibit B). The Pricing Schedule for the BAAN Integration Agreement provided that the initial cost of the project would be $180,000. Transformations is also entitled to an

4

annual maintenance, support and licensing fee of $36,000 (based upon twenty percent of the initial cost of $180,000), plus tax.

14. In or about November 2002, Dana sold its Boston Weatherhead division to Eaton. Prior to that time, Dana asked Transformations to approve Dana's assignment of the relevant contracts to Eaton. Transformations provided its consent to the assignment.

15. After Eaton purchased the business, one of its agent or employees, Dave Devaughn ("Mr. Devaughn"), asked Transformations to reduce the amount of the annual fee. Mr. Devaughn stated that the reason for the reduction was that Eaton would not be using some components of the software at their Howenwald and Newbern locations. As an enticement, on behalf of Eaton, Mr. Devaughn promised and assured Transformations in a telephone call on or about November 3, 2002, that Eaton would give Transformations the opportunity to complete for the right to provide Transformations' software in its Cleveland, Crossville and Vinita facilities. Transformations relied upon these promises and assurances and reduced its fee. Despite this, when Eaton ultimately installed new warehouse management software at its various facilities, it never considered or contacted Transformations about the projects, or even allowed Transformations to bid for the projects. In this way, Eaton's representations made by Mr. Devaughn were false.

16. Then, when the annual fee under the TransMRP Agreement became due and payable on December 1, 2003, Eaton refused to pay the fee altogether. During November and December of 2003, Eaton began working to induce Transformations to lower its fees. As part of these efforts, Mr. Jana Varadachari ("Mr. Varadachari"),

Global IS Manager for Eaton, represented to Mr. Robert Davis ("Mr. Davis"), Vice President of Sales for Transformations, that Eaton planned to close one of its plants during 2004, and to discontinue using the Software in another plant.  Mr. Varadachari further stated that because of these plans, Eaton wished to have the annual fee reduced, but promised that Transformations would be considered as a source for other installations of warehouse management software for Eaton.  These representations were false.  In reliance on the misrepresentations made by Mr. Varadachari regarding closing plants and discontinuing the use of software, Transformations agreed to accept a reduced maintenance, support and licensing fee of $87,400 for the period December 1, 2003 through December 1, 2004**.**

17. During 2004, Eaton did not discontinue its use of the Software, and although it announced that it would close one of its plants by June of 2004, that plant remains open.

18. During 2004, Transformations provided additional services to Eaton that were outside the scope of the agreements between the parties.  These services involve many calls, questions and requests for aid from Eaton's employees at plants which use Transformations software.  These calls and requests continue to this day. Transformations has billed Eaton for these services, but Eaton has failed to pay for those services.

19. The December 2004-December 2005 annual fee for the TransMRP Agreement was due on December 1, 2004.  Eaton has not paid that fee.  Based upon information and belief, Eaton, nevertheless, continues to use the Software.

## CAUSES OF ACTION

### COUNT I (BREACH OF CONTRACT)

20. Transformations restates and realleges the allegations contained in paragraphs 1 through 19 above.

21. Eaton breached the TransMRP Agreement by failing to pay the full amount of the annual fee pursuant to the TransMRP Agreement on December 1, 2003.

22. Eaton breached the TransMRP Agreement by failing to pay the annual fee pursuant to the TransMRP Agreement on December 1, 2004.

23. Eaton breached the BAAN Integration Agreement by failing to pay the $36,000 annual maintenance, support and licensing fee due under that agreement for the period of July 2003 through July 2004.

24. Eaton has breached its further agreement with Transformations to pay for certain maintenance and support services provided to Eaton that were not covered by the two other agreements, because it has failed to pay for those services.

25. As a result of the breaches of contract described above, Transformations is now suffering and will continue to suffer harm. These actions constituted breaches of contract.

### COUNT II (UNJUST ENRICHMENT)

26. Transformations restates and realleges the allegations contained in paragraphs 1 through 25 above.

27. Eaton has been using the Software since December 1, 2003 without having paid the full contract amount for the licensing, maintenance and servicing of the

Software.  **Moreover, Transformations continues to provide ongoing support at least daily or weekly, for which Eaton is not paying.**

28.     As a result of Eaton's continuing and unauthorized use of the Software and Transformations' services, Eaton has become unjustly enriched at the expense, and to the detriment, of Transformations.

29.     Eaton has acted in bad faith, by reason of which Transformations is entitled to recover its attorney's fees and expenses of litigation in amounts to be shown at the trial of this case.

### COUNT III (FRAUD)

30-39. In Transformations' original complaint, paragraphs 30-39 stated a cause of action for fraud.  Transformations is no longer pursuing its fraud claim.

### COUNT IV (CIVIL RICO)

40-49. In Transformations' original complaint, paragraphs 40-49 stated a cause of action for civil RICO.  Transformations is no longer pursuing its civil RICO claim.

### COUNT V (DECLARATORY RELIEF)

50.     Transformations restates and realleges the allegations contained in paragraphs 1 through 29 above.

51.     Eaton has continued to use the Software since December 1, 2003, despite the fact that it did not pay the full amount of the annual fee due under the TransMRP Agreement on December 1, 2003, and that it did not pay any of the annual fee due on December 1, 2004.

52.     Because Eaton has not paid the maintenance, support and licensing fees due under the TransMRP Agreement, Eaton is entitled to a declaration that

Transformations can exercise its rights as license holder to prevent Eaton from continuing to use the Software. This is an actual controversy that is ripe for adjudication and, therefore, this Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §2201(a).

**WHEREFORE**, Plaintiff Transformations, Inc. respectfully requests that this Honorable Court enter judgment in its favor and against Defendant Eaton Corporation, and enter an order granting the following relief:

1) Award Transformations all damages recoverable at law in an amount to be proved at trial;

2) Award Transformations attorney's fees and expenses of litigation;

3) Declare that Transformations can exercise its rights as license holder to prevent Eaton from continuing to use the Software; and

4) Award any other relief in favor of Transformations that the Court deems just and proper.

Respectfully submitted,

_____
Robert J. Mendes, #17120
Janna Eaton Smith, #20529
MGLAW PLLC
120 30th Avenue North, Suite 1000
Nashville, Tennessee 37203
(615) 846-8000

– and –

George M. Johnson, #5766
George M. Johnson, P.C.
215 High Lea Road
Brentwood, Tennessee 37027
(615) 373-2054